**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY R. SCOTT, | ) | CASE NO. 1:13-CV-514 |
| | ) | |
| Plaintiff, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Jeffrey R. Scott ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"),[1] denying

his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"),

and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant

to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate

Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation.  For the reasons set forth below, the Magistrate Judge recommends

that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On December 16, 2009, Plaintiff filed applications for POD, DIB, and SSI,

alleging a disability onset date of June 8, 2007.  (Transcript ("Tr.") 19.)  The applications

---

[1]     On February 14, 2013, Carolyn W. Colvin became Acting Commissioner
of Social Security.  She is automatically substituted as the defendant in
this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

were denied initially and upon reconsideration, and Plaintiff requested a hearing before

an ALJ.  (*Id.*)  On September 22, 2011 an administrative law judge ("ALJ") held

Plaintiff's hearing.  (*Id.*)  Plaintiff appeared, was represented by an attorney, and

testified.  (*Id.*)  In lieu of testifying, vocational expert ("VE") submitted responses to

interrogatories after the hearing.  (*Id.*)  On December 16, 2011, the ALJ found that

Plaintiff was not disabled.  (Tr. 27.)  On February 13, 2013, the Appeals Council

declined to review the ALJ's decision, and that decision became the Commissioner's

final decision.  (Tr. 1.)

On March 8, 2013, Plaintiff filed his complaint to challenge the Commissioner's

final decision.  (Doc. No. 1.)  The parties have completed briefing in this matter.  (Doc.

Nos. 13, 14, 15.)  Plaintiff asserts that, for various reasons, substantial evidence does

not support the ALJ's conclusion that Plaintiff was capable of performing work.

## II.    EVIDENCE

### A.    Personal, Education and Vocational Evidence

Plaintiff was born on October 31, 1979.  (Tr. 25.)  He had no past relevant work.

(*Id.*)  In an undated Adult Function Report, Plaintiff reported that he lived with his

girlfriend and their children.  (Tr. 201.)  He cared for his children, giving them baths and

cooking for them.  (Tr. 202.)  Plaintiff denied having any problems with personal care,

and reported that he was able to cook meals using the microwave.  (Tr. 203.)  Plaintiff

did not drive, but was able to walk and use public transportation.  (Tr. 204.)  He

watched television and played video games "a lot," and did not spend much time with

others.  (Tr. 205.)  Plaintiff reported that he was able to pay bills, count change and use

a checkbook and money orders, but could not handle a savings account.  (*Id.*)

Testing conducted by Cleveland Public School officials in 1993 – when Plaintiff was in 7th grade – revealed that Plaintiff achieved a full-scale IQ score of 83, with a verbal IQ score of 86 and a performance IQ score of 82.  (Tr. 236.)

**B.    Medical Evidence**

**1.    Plaintiff's Providers**

On March 4, 2009, psychiatrist Farid Talih, M.D., examined Plaintiff, who complained of paranoia, delusions, auditory hallucinations, anxiety, sadness and depression.  (Tr. 327.)  Plaintiff described a history of anger and outbursts, exacerbated by drinking alcohol, as well as using alcohol and marijuana.  (*Id.*)  Plaintiff reported living with his girlfriend, with whom he frequently fought.  (*Id.*)  Plaintiff denied ever having been hospitalized.  (*Id.*)  Dr. Talih described Plaintiff as "disheveled" and "smell[ing] strongly of nicotine."  (*Id.*)  Dr. Talih noted that Plaintiff had "very concrete" thought processes; fair attention and concentration; intact memory and cognition; and normal intelligence.  (*Id.*)  Dr. Talih diagnosed Plaintiff with schizoaffective disorder, depression with psychosis and alcoholism in early remission. (*Id.*)  He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 30 to 40, "moderate to severe." (*Id.*)  Dr. Talih prescribed Celexa, Risperdal and Vistaril.  (*Id.*)

On May 6, 2009, Dr. Talih described Plaintiff as "agitated" due to a conversation with his father and girlfriend, but noted that Plaintiff described himself as "improved." (Tr. 326.)  Plaintiff reported that he had decreased his alcohol intake and had stopped smoking marijuana.  (*Id.*)  Dr. Talih described Plaintiff as awake, oriented, pleasant and

cooperative, and opined that Plaintiff was "responding well," with fair attention and concentration, and "improving" insight and judgment.  (*Id*.)  Dr. Talih continued Plaintiff's medications.

On October 21, 2009, Plaintiff reported to the emergency department at Ashtabula Medical Center, complaining that he had been side-swiped by an automobile, which struck his hip and elbow with its rearview mirror.  (Tr. 402.)  Staff noted that Plaintiff had an abrasion on his right hip and ambulated with difficulty.  (*Id*.)  An emergency department physician diagnosed Plaintiff with a contusion, prescribed pain medication, and discharged him.  (Tr. 406.)

On October 26, 2009, Plaintiff returned to Dr. Talih after a five-month absence. (Tr. 325.)  Plaintiff had discontinued all of his medications, and reported auditory hallucinations and depression.  (*Id*.)  Plaintiff complained of feeling sadness, hopelessness and a passive death wish.  (*Id*.)  Dr. Talih described Plaintiff as awake, oriented, pleasant and cooperative, but noted that he was listening to music to drown out the auditory hallucinations.  (*Id*.)  Dr. Talih opined that Plaintiff had impaired attention, concentration and cognition.  (*Id*.)  Dr. Talih diagnosed Plaintiff with schizophrenia, and prescribed Haldol, Cogentin and Prozac.  (*Id*.)

On January 6, 2010, Dr. Talih opined that Plaintiff had an "improved mental status," was "doing better" and was tolerating the medications.  (Tr. 324.)  Plaintiff had good attention and concentration, intact cognition, no hallucinations.  (*Id*.)  Dr. Talih diagnosed Plaintiff with schizophrenia, in remission, and continued his medications. (*Id*.)  On February 17, 2010, Plaintiff reported to Dr. Talih that he had been unable to

refill his Haldol prescription and was experiencing hallucinations.  (Tr. 374.)  Plaintiff admitted to drinking alcohol the week before, which had increased his hallucinations. (*Id*.)  Plaintiff felt overwhelmed and unhappy in his relationship, depressed, sad, hopeless and helpless.  (*Id*.)  Dr. Talih encouraged Plaintiff to remain sober.  (*Id*.)  He prescribed an increased dose of Haldol, prescribed Remeron, and otherwise continued Plaintiff's medications.  (*Id*.)

On March 17, 2010, Plaintiff reported that he was doing well and was compliant with his medication.  (Tr. 373.)  Dr. Talih noted that Plaintiff's mental status examination was improved, with fair concentration and attention, and no hallucinations.  (*Id*.)  Dr. Talih continued Plaintiff's medications.   On May 3, 2010, Plaintiff reported that he was doing "relatively well" and was tolerating his medications.  (Tr. 372.)  Dr. Talih noted that Plaintiff's judgment and insight were improving and that Plaintiff had no hallucinations. (*Id*.)  He continued Plaintiff's medications.  (*Id*.)  On that same date, Dr. Talih completed a mental functional capacity assessment for the Ohio Department of Jobs and Family Services ("ODJFS"), in which he opined that Plaintiff was markedly limited in all categories related to understanding and memory, social interaction, and adaptation. (Tr. 380.)  He noted that Plaintiff had "chronic" schizophrenia, with "impaired" cognition, attention and memory; limited insight and judgment; and hallucinations, paranoia and disorganized thinking.  (Tr. 381.)  He opined that Plaintiff was "unemployable."  (Tr. 380.)

On March 31, 2011, Certified Nurse Practitioner David L. Brager examined Plaintiff.  (Tr. 439-40.)  He diagnosed Plaintiff with mood disorder (not otherwise specified), psychotic disorder (not otherwise specified), and alcohol dependence (early

5

full remission).  (Tr. 439.)  He assigned Plaintiff a GAF score of 55 to 60.  (*Id.*)

### 2. Agency Reports and Assessments

On March 22, 2010, agency consultant Richard C. Halas, M.A., examined

Plaintiff.  (Tr. 330-41.)  Plaintiff reported that he had attended regular classes at school,

but had stopped attending school in ninth grade, and had failed seventh and ninth

grades.  (Tr. 330.)  He had not been able to pass a GED pretest.  (*Id.*)  Plaintiff

reported a history of arrests for arson, vandalism and disorderly conduct.  (Tr. 331.)

Mr. Halas described Plaintiff as disheveled, unkempt, disoriented and confused,

and emanating a body odor.  (Tr. 331.)  Mr. Halas assessed Plaintiff's speech as slow,

hesitant and constricted, and opined that Plaintiff had limited coherency, significant

poverty of speech and "quite simple" associations.  (Tr. 332.)  Plaintiff was oriented to

time, place and person, but answered incorrectly with respect to what day of the week it

was.  (Tr. 333.)  He exhibited below average short-term memory, and was unable to

perform simple calculations.  (*Id.*)

Mr. Halas diagnosed Plaintiff with major depression and borderline intellectual

functioning.  (Tr. 334.)  He noted that Plaintiff did not meet the diagnostic criteria for

mild mental retardation.  (*Id.*)  Mr. Halas opined that Plaintiff was markedly impaired in

his ability to: understand, remember and follow instructions; relate to others, including

fellow workers and supervisors; and maintain attention and concentration to perform

simple, repetitive tasks.  (Tr. 334-35.)  However, Mr. Halas concluded that Plaintiff was

not limited in his ability to withstand the stresses and pressures associated with most

day-to-day work activities, noting that Plaintiff "did not show . . . an adverse reaction to

stress" during mental status testing. (Tr. 335.)

Mr. Halas performed the Weschler Adult Intelligence Scale IV, which revealed that Plaintiff had a full scale IQ of 55, which placed him in the first percentile of the adult population. (Tr. 333.) Mr. Halas opined that Plaintiff's scores on intellectual testing were "inconsistent" with Plaintiff's "previous placement in regular classes." (*Id*.)

On April 2, 2010, agency consultant Marianne Collins, Ph.D., performed a psychiatric review technique and mental residual functional capacity ("RFC") assessment. (Tr. 341-54, 355-58.) Dr. Collins opined that Plaintiff had major depression and borderline intellectual functioning. (Tr. 344, 345.) She assigned Plaintiff moderate limitations in maintaining social functioning and maintaining concentration, persistence and pace. (Tr. 351.) In her mental RFC assessment, Dr. Collins determined that Plaintiff was moderately limited in the ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 355-56.) She described Plaintiff's ability to work as follows:

> Claimant has symptoms of Major Depression, and B[orderline] I[ntellectual] F[unctioning]. These symptoms do not prevent claimant from carrying out daily activities. Claimant is able to understand, remember, [and] carry out simple quick work tasks. Claimant maintains sufficient concentration and persistence for these work tasks. Claimant would have difficulty with more detailed tasks and

7

maintaining concentration for extended periods of time. Claimant is able to interact with co-workers on a superficial basis.  Claimant may have difficulty with jobs requiring frequent changes in pace.

(Tr. 358.)

On April 7, 2010, agency consultant Catherine Watkins-Campbell, M.D., M.P.H., examined Plaintiff.  (Tr. 360-69.)  Plaintiff complained of a laceration to his left hand, a toothache and depression.  (Tr. 360.)  Plaintiff reported neck pain, and low back pain on his right side, accompanied by cramping pain in his right leg.  (Tr. 361.)  Plaintiff described knee pain and burning in the arches of his feet, and stated that his left knee occasionally gave out.  (*Id*.)  Dr. Watkins-Campbell noted that Plaintiff moved around without assistive devices.  (Tr. 362.)

Examination revealed decreased lumbosacral range of motion, and limited range of motion in both knees.  (Tr. 363.)  Plaintiff's gait and reflexes were normal, but he reported mild pain with range of motion in the left knee.  (*Id*.)  Dr. Watkins-Campbell opined that Plaintiff had "minor musculoskeletal issues," including mild bilateral chrondromalacia patella in the knees, tendonitis in the left knee, and myofascial pain syndrome in the low back and lower extremities.  (Tr. 364.)  She concluded that Plaintiff could: stand for three hours, sit for three hours, and walk for two hours in an eight-hour workday; could occasionally kneel, squat, crawl, twist and bend; and could carry 20 top 50 pounds occasionally and 20 pounds frequently.  (*Id*.)

On May 4, 2010, agency consultant Gerald Klyop, M.D., performed a physical

8

RFC assessment.  (Tr. 382-89.)[2]  Dr. Klyop opined that Plaintiff could: lift 50 pounds occasionally and 25 pounds frequently; stand, walk and/or sit for about six hours in an eight-hour workday; and occasionally use ladders, ropes and scaffolds and kneel.  (Tr. 383, 384.)

On August 19, 2010, agency consultant John Waddell, Ph.D., affirmed Dr. Collins's mental RFC assessment.  (Tr. 433.)  On August 30, 2010, agency consultant Elizabeth Das, M.D., affirmed Dr. Watkins-Campbell's physical RFC assessment.  (Tr. 434.)

## C. Hearing Testimony

### 1. Plaintiff's Testimony

At his September 22, 2011 administrative hearing, Plaintiff testified as follows:

Plaintiff had used public transportation to travel to the hearing.  (Tr. 45.)  He completed eighth grade.  (Tr. 45-46.)  Plaintiff could read, but had a "really short" attention span.  (Tr. 46.)  He could add and subtract, and make change for a dollar, but could not do division.  (Tr. 47.)

Plaintiff received food stamps and cash assistance for his daughters.  (Tr. 49.)  He had a medical card, but didn't go to the doctor very often because he had grown used to not doing so when he did not have medical card.  (*Id*.)  He had recently cleaned up a highway as part of a sentence of community service for a criminal charge.  (Tr. 50.)  Plaintiff had stopped drinking about one week before the hearing.  (Tr. 52-53.)

Plaintiff could not work because his left knee "popped" when he stood on his feet

---

[2] Dr. Klyop's May 4, 2010 RFC assessment appears in the record twice.  (Tr. 382-89, 390-97.)  The two assessments are identical.

for long periods of time, and his lower back was weak from standing for long periods of time.  (Tr. 53-56.)  His schizophrenia prevented him from dealing with pressure, and he "c[ouldn't] really function" when his mental impairments were "negative."  (Tr. 56.)  His mental impairments improved when he was taking his medication.  (Tr. 57.)

Plaintiff had not received any treatment for his hip, which was injured when a car side-swiped him.  (Tr. 58.)  His typical day consisted of waking up, going to appointments and waiting for his children to get out of daycare.  (Tr. 62.)  He helped his daughters – who were two and six years old – with their homework, changed their diapers and fed them.  (Tr. 66.)  Plaintiff did laundry, but his mother folded the clothes.  (Tr. 68.)  He vacuumed and changed the bed sheets.  (Tr. 68-69.)

### 2.  VE Interrogatories

Due to a scheduling error, the VE was not present for Plaintiff's administrative hearing.  (Tr. 38.)  The ALJ stated that he intended to send the VE interrogatories, and Plaintiff's counsel requested that the ALJ include as one of the hypotheticals the limitations set forth in Dr. Collins's mental RFC assessment and Dr. Talih's responses to the ODJFS questionnaire.  (Tr. 74.)

The first hypothetical included in the interrogatories asked the VE to consider an individual of Plaintiff's age and education status, with the following limitations:

> He can lift, carry, push and/or pull 50 pounds occasionally and 25 pounds frequently.  He can walk and stand for 6 hours in an 8-hour workday with normal breaks and can sit for 6 hours in an 8-hour workday with normal breaks.  He is limited to occasional balancing and stooping.  He can understand, remember and carry out simple quick work tasks.  He maintains sufficient concentration and persistence for these work tasks.  He would have difficulty with more detailed tasks and maintaining concentration for extended

> periods of time.  He can interact with co-workers on a
> superficial basis.  He may have difficulty with jobs requiring
> frequent changes in pace.

(Tr. 258.)  The VE opined that the hypothetical individual could perform work as a

laundry worker, kitchen helper, or hand packager.  (Tr. 259.)

The second hypothetical asked the VE to consider an individual of Plaintiff's age

and education status, with the following limitations:

> He can lift, carry, push and/or pull 50 pounds occasionally
> and 20 pounds frequently.  He can stand 3 hours, sit 3
> hours, and walk 2 hours in an 8-hour workday with normal
> breaks.  No assistive devices are required.  He is limited to
> occasional kneeling, squatting, crawling, twisting and
> bending.  He can understand, remember, and carry out
> simple, quick work tasks.  He maintains sufficient
> concentration and persistence for these work tasks.  He
> could have difficulty with more detailed tasks and with
> maintaining concentration for extended periods of time.  He
> can interact with co-workers on a superficial basis.  He may
> have difficulty with jobs requiring frequent changes in pace.

(Tr. 259-60.)  The VE opined that the individual described in the second hypothetical

would not be capable of performing any work.  (Tr. 260-61.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he

establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y*

*of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered

disabled when he cannot perform "substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet

certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

12

## IV.    SUMMARY OF COMMISSIONER'S DECISION

In her December 16, 2011 decision, the ALJ made the following findings of fact

and conclusions of law:

1.    Plaintiff met the insured status requirements of the Act through June 30, 2008.

2.    Plaintiff has not engaged in any substantial gainful activity since June 8, 2007, the alleged onset date.

3.    Plaintiff had the severe impairments of depression, borderline intellectual functioning and substance addiction disorder.

4.    Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c). Plaintiff can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently.  With normal breaks, he can also sit, stand, or walk for six hours of an eight-hour workday.  However, he is limited to only occasional balancing and stooping.  In terms of his mental limitations, he retains the capacity to understand, remember, and carry out simple, quick work tasks and can maintain sufficient concentration and persistence for said tasks.  However, he would have difficulty with more detailed tasks and maintaining concentration for extended periods.  Finally, while he can interact with co-workers on a superficial basis, he may have difficulties with jobs requiring frequent changes of pace.

6.    Plaintiff has no past relevant work.

7.    Plaintiff was born on October 31, 1979 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.    Plaintiff has a limited education and is able to communicate in English.

9.    Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

10.    Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11.    Plaintiff has not been under a disability, as defined in the Act, from June 8, 2007

through December 16, 2011, the date of the ALJ's decision.

(Tr. 21-27.)

## 1. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

14

**B.**    **Plaintiff's Arguments**

Plaintiff argues that substantial evidence does not support the ALJ's decision because the ALJ: (1) failed to give appropriate weight to the opinion of Dr. Talih; (2) erroneously rejected the IQ score measured by consulting examiner Halas, and, thus, erred in concluding that Plaintiff did not satisfy Listing 12.05(C); and (3) erred at step five of the sequential analysis in rejecting Dr. Watkins-Campbell's limitations without sufficient explanation.

### 1.    Dr. Talih

There is no dispute that Dr. Talih was Plaintiff's treating psychiatrist.  In a May 2010 ODJFS questionnaire, Dr. Talih opined that Plaintiff was markedly limited in every category relating to work, and pointed to Plaintiff's schizophrenia and related mental limitations.  (Tr. 380-81.)  Dr. Talih opined that Plaintiff was "unemployable."  (Tr. 380.)  The ALJ assigned "little weight" to Dr. Talih's opinion, noting that it was "inconsistent with the record as a whole, particularly [Plaintiff's] activities of daily living, but the determination of whether a person is disabled is, for our purposes, reserved for the Commissioner of Social Security."  (Tr. 25.)

An ALJ must give the opinion of a treating source controlling weight if she finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  Conversely, a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent

15

with the rest of the evidence.  *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993).

If an ALJ decides to give a treating source's opinion less than controlling weight, she

must give "good reasons" for doing so that are sufficiently specific to make clear to any

subsequent reviewers the weight given to the treating physician's opinion and the

reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL

374188, at *5 (S.S.A.)).

Plaintiff argues that sufficient evidence does not support the ALJ's decision to

afford less than controlling weight to Dr. Talih's opinion.  Specifically, Plaintiff contends

that Dr. Talih's opinion is actually "wholly consistent" with the record, and points to the

opinion of examiner Halas – who found Plaintiff to be markedly limited in various areas

– and to the GAF scores assigned to Plaintiff by Dr. Talih and CNP Brager.

Respondent argues that the record supports the ALJ's decision to assign little weight to

Dr. Talih's opinion.

Plaintiff's argument lacks merit, as Dr. Talih's opinion was inconsistent with

other evidence in the record.  Specifically, Dr. Talih's treatment notes do not reflect the

limitations he described in the May 2010 questionnaire.  Rather, the records reflect – as

the ALJ noted (tr. 24) – that Plaintiff improved when he was compliant with his

medication regimen.  Indeed, Dr. Talih's March 2010 treatment note indicates that

Plaintiff – who was then complying with his medication regimen – had fair attention and

concentration, and an improved mental status examination.  (Tr. 373.)  In January

2010, when Plaintiff was again complying with his treatment regimen, Dr. Talih

described Plaintiff's attention and concentration as "good," and his cognition as "intact."

(Tr. 375.)  He noted that Plaintiff was not experiencing hallucinations and was

"coherent." (*Id*.)  Those instances in which Dr. Talih noted worsening or more extreme symptoms were occasioned by Plaintiff's failure to comply with his treatment regimen, either by not taking his medication or by drinking alcohol.  (Tr. 374, 376.)  Further, Plaintiff's activities of daily living reflected less severe limitations than those assigned by Dr. Talih.  The record reflected that Plaintiff was able to attend to his personal needs, care for his children, use public transportation, shop, pay bills, use a checkbook, go to appointments, and play video games.

Plaintiff notes that Dr. Talih's opinion is consistent with the opinion of consulting examiner Halas.  The ALJ rejected Mr. Halas's opinion, finding that it was "internally inconsistent" because Mr. Halas assigned Plaintiff marked limitations in several areas – understanding, remembering and following simple instructions; maintaining attention and concentration; and relating to others – but found no limitation in Plaintiff's ability to withstand the stress and pressures associated with day-to-day work activities.  (Tr. 25.)  Plaintiff concedes that these findings are "quite inconsistent" but asserts that the inconsistency is "possibly a mistake on the psychologist's part," and "[i]n the absence of follow-up questioning, it appears to be wrong to discard the whole opinion."  (Plaintiff's Brief ("Pl. Br.") at 12.)  This argument, however, is not sufficient to undermine the ALJ's decision to reject examiner Halas's opinion, particularly as the ALJ also noted that Mr. Halas's opinion was inconsistent with the record as a whole.  (Tr. 25.)

In addition to noting that Dr. Talih's opinion was not consistent with the record, the ALJ observed that Plaintiff had not "received the type of treatment one would expect for a totally disabled individual," noting that Plaintiff had sporadically taken his medication and had only periodically received psychological counseling.  (Tr. 24.)

17

Plaintiff contends that substantial evidence does not support the ALJ's decision to rely on Plaintiff's treatment history to discredit Dr. Talih's opinion because "mental illness is so difficult to treat and typically . . . mentally ill patients don't take their medications and are vague or evasive when discussing their problems."  (Pl. Br. 12-13.)  This unsupported conclusion is not sufficient to undermine the ALJ's opinion on this point, particularly as the record supports the ALJ's observation that Plaintiff improved with medication and when he complied with his physician's instructions.

In her reply brief, Plaintiff contends that the ALJ erred in pointing to Plaintiff's treatment history as a basis for concluding that Plaintiff's symptoms were not as severe as Plaintiff alleged, or as they were described in Dr. Talih's opinion.  She points to the Sixth Circuit's decision in *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488 (6th Cir. 2011), in which the ALJ discounted the claimant's alleged mental impairment because she failed to seek formal treatment.  The Sixth Circuit cautioned against such reasoning, noting that "the failure to seek formal mental health treatment is hardly probative of whether the claimant suffers from a mental impairment . . . and should not be a determinative factor in a credibility assessment relating to the existence of a mental impairment."  451 F. App'x at 493 (internal quotation marks and citations omitted).

This argument does not require remand in this case.  Although the ALJ pointed to the sporadic nature of Plaintiff's treatment in this case (tr. 24), he also relied on other evidence in the record – such as Plaintiff's daily activities and the fact that he improved when compliant with his treatment regimen – to conclude that Plaintiff's symptoms were not as severe as Dr. Talih described.  Further, in addition to noting the sporadic nature

18

of the treatment, the ALJ also observed that, when Plaintiff did receive treatment, it was not "the type of treatment one would expect for a totally disabled individual."  (*Id*.)  Accordingly, to the extent that the ALJ erred in relying on Plaintiff's lack of treatment to support his conclusion that Plaintiff was not disabled, other portions of the record – cited by the ALJ – support his conclusion, and, thus, any error in this context did not prejudice Plaintiff in this case.

Plaintiff contends that the ALJ incorrectly cited to portions of the record to support his observations regarding Plaintiff's daily activities.  In describing Plaintiff's daily activities, the ALJ cited to three documents in the transcript.  (Tr. 22.)  One of these was the undated Adult Function Report.  The other two were medical records.  Although the medical records did not contain specific references to Plaintiff's daily activities, the Adult Function Report was replete with such information.  Accordingly, to the extent that the ALJ erred in pointing to the medical records to support his conclusion, Plaintiff was not prejudiced by the error because the Adult Function Report substantially supported the ALJ's conclusion on this point.

Finally, Plaintiff asserts that the ALJ erred in concluding that Plaintiff could manage a checkbook.  Plaintiff concedes that, in the Adult Function Report, he stated that he could manage a checkbook.  (Tr. 205.)  However, in his Brief, he argues that "this was in the context that he said he only watched TV and played games.  He said he could not handle a savings account so managing a checkbook is suspect.  He probably can purchase a money order.  That is different than managing a checkbook."  (Pl. Br. 14.)  This argument fails for several reasons.  First, Plaintiff does not explain how the context in which Plaintiff responded to the question rendered his response unreliable.

19

Second, Plaintiff points to nothing in the record that undermines his statement that he was capable of managing a checkbook.  Third, Plaintiff does not explain how, in light of the evidence of his other daily activities, the ALJ's allegedly erroneous conclusion on this point prejudiced him.  Accordingly, Plaintiff's argument regarding Dr. Talih's opinion provides no basis for remand in this case.

### 2.    Plaintiff's IQ Score

In his decision, the ALJ acknowledged that Plaintiff had achieved a full scale IQ score of 55 on testing performed by consulting examiner Halas in March 2010.  (Tr. 22.) However, the ALJ rejected that score, noting that "testing performed in April 1993 revealed a full-scale IQ score of 83.  In the absence of significant head trauma, his prior achievement invalidates his recent score."  (*Id.*)

Plaintiff contends that substantial evidence does not support the ALJ's basis for rejecting the March 2010 IQ score.  Specifically, Plaintiff points to his grades in school – consisting mostly of failing scores – his lack of employment history, and his confusion regarding the day of the week during his examination by Mr. Halas to argue that the later IQ score was valid.  None of this evidence, however, compels the conclusion that the April 1993 IQ score was invalid, or that the ALJ erred in relying on it to reject the later IQ score.  Plaintiff also refers to various outside texts to argue that "IQ scores level off at age 16," and notes that the record is devoid of IQ testing after Plaintiff's sixteenth birthday until the testing performed by Mr. Halas in March 2010.  Notwithstanding the fact that the texts to which Plaintiff refers are not included in the record, Plaintiff fails to explain how evidence that IQ scores level off – rather than decrease – after age 16 undermines the validity of the April 1993 test result.  Plaintiff's arguments on this point

20

lack merit, and substantial evidence supports the ALJ's decision to reject the March 2010 IQ score.

### 3.     Step Five

In his second hypothetical to the VE, the ALJ included the limitations set forth in Dr. Watkins-Campbell's April 2010 report, which limited Plaintiff to three hours of standing, three hours of sitting and two hours of walking in an eight-hour day.  (Tr. 259-61, 364.)  The VE opined that an individual with those limitations would not be capable of performing any work.  (Tr. 260-61.)  In his decision, the ALJ assigned "some weight" to Dr. Watkins-Campbell's opinion, noting that her conclusions "were not entirely consistent with the record as a whole, particularly [Plaintiff's] lack of physical treatment." (Tr. 24-25.)

Plaintiff argues that substantial evidence does not support the ALJ's decision to assign some weight to Dr. Watkins-Campbell's opinion and to fail to incorporate her suggested physical restrictions into Plaintiff's RFC.  Specifically, Plaintiff contends that the ALJ selected portions of the medical evidence that supported the limitations included in Plaintiff's RFC and ignored evidence that required greater limitations.

Plaintiff's argument lacks merit.  In his decision, the ALJ noted that Plaintiff had not received medical treatment for his complaints of hip, knee and low back pain.  (Tr. 21.)  The record supports this observation, as there is no evidence that Plaintiff received ongoing medical treatment or therapy for his physical ailments.  Despite his argument that the ALJ "cherry picked" evidence to support his conclusion, Plaintiff points to nothing in the record suggesting that his physical ailments required any treatment or were sufficiently severe to be disabling.  In his Reply Brief, Plaintiff argues

that the ALJ impermissibly adopted some of Dr. Watkins-Campbell's conclusions while rejecting others.  However, there is no requirement that an ALJ accept every facet of an opinion to which he assigns weight.  Rather, the relevant regulations require only that an ALJ explain the general weight given to the opinions of non-examining physicians. *See* 20 C.F.R. § 404.1527(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical . . .  consultant . . . .").  Accordingly, substantial evidence supports the ALJ's decision not to include Dr. Watkins-Campbell's physical restrictions in Plaintiff's RFC.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: October 16, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**